IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )<br>IN RE RULE 45 SUBPOENA TO )<br>NON-PARTY )<br>SENATOR RICHARD BLUMENTHAL )<br> )<br>in the matter of )<br> )<br>CARE ONE MANAGEMENT, LLC, *et al.*, )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>UNITED HEALTHCARE WORKERS )<br>EAST, SEIU 1199, *et al.*, )<br> )<br>Defendants, )<br>_____ ) | Misc. No. _____<br><br><br><br>[Underlying civil action filed in<br> U.S. District Court for the<br> District of New Jersey,<br> Case No. 2:12-cv-06371-SDW-MAH] |

**MOTION OF SENATOR RICHARD BLUMENTHAL
TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER**

United States Senator Richard Blumenthal, by and through undersigned counsel, hereby

respectfully moves this Court pursuant to Fed. R. Civ. P. 45(d)(3) for an order quashing the third-

party subpoena issued to him by Plaintiffs for deposition testimony and production of documents

in *Care One Management LLC, et al. v. United Healthcare Workers East, SEIU 1199, et al.*,

Case No. 2:12-cv-06371, pending in the U.S. District Court for the District of New Jersey, and

for a protective order against further discovery from him or his office in this case.

As set forth in detail in the accompanying Memorandum of Points and Authorities in

Support of Senator Richard Blumenthal's Motion to Quash Subpoena and for a Protective Order,

the grounds for this motion are:  (a) the subpoena presents an undue burden due to its

exceptionally broad scope and the lack of any showing of relevance of the requested discovery to

plaintiffs' claims; (b) the Speech or Debate Clause of the Constitution protects Senators from

being compelled to testify or provide documents regarding their (or their staff's) communications

or deliberations within the legislative sphere, and (c) no exceptional circumstances justify

compelling deposition testimony from Senator Blumenthal, a high-ranking government official,

in this case.

Respectfully submitted,

Morgan J. Frankel, Bar #342022
morgan_frankel@legal.senate.gov
Senate Legal Counsel

Patricia Mack Bryan, Bar #335463
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
thomas_caballero@legal.senate.gov
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel)
(202) 224-3391 (fax)

Date:   April 15, 2014

Counsel for Subpoena Respondent
Senator Richard Blumenthal

2

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2014, copies of the foregoing Motion of Senator Richard Blumenthal to Quash Subpoena and for a Protective Order and the accompanying Proposed Order were served by electronic mail and first class U.S. Mail on counsel for plaintiffs and counsel for defendants in the underlying civil action, 2:12-cv-06371 (D.N.J.), at the following addresses:

Rosemary Alito, Esq.
rosemary.alito@klgates.com
George P. Barbatsuly, Esq.
george.barbatsuly@klgates.com
K&L GATES LLP
One Newark Center, Tenth Floor
Newark, NJ 07012-5252

Counsel for Plaintiffs


Michael D. Critchley, Esq.
mcritchley@critchleylaw.com
Critchley & K, LLC
75 Livingston Avenue
Roseland, NJ 07068-3737

Counsel for Plaintiffs


Leon Dayan, Esq.
ldayan@bredhoff.com
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street, N.W.
Washington, DC 20005-2207

Counsel for Defendants


David M. Slutsky, Esq.
Dslutsky@levyratner.com
LEVY RATNER, P.C.
80 8th Avenue, 8th Floor
New York, NY 10011

Counsel for Defendant United Healthcare
Workers East, SEIU 1199


_Morgan J. Frankel_ (signature)
_____
Morgan J. Frankel

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
                                        )
IN RE RULE 45 SUBPOENA TO               )
NON-PARTY                               )
SENATOR RICHARD BLUMENTHAL              )
                                        )
in the matter of                       )
                                        )       Misc. No. _____
CARE ONE MANAGEMENT, LLC, *et al.*,     )
                                        )
        Plaintiffs,                     )
                                        )
        v.                              )       [Underlying civil action filed in
                                        )        U.S. District Court for the
UNITED HEALTHCARE WORKERS               )        District of New Jersey,
EAST, SEIU 1199, *et al.*,              )        Case No. 2:12-cv-06371-SDW-MAH]
                                        )
        Defendants,                     )
_____ )

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF SENATOR RICHARD BLUMENTHAL'S
MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER**

# TABLE OF CONTENTS

Exhibits List. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Introduction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

 A. The Labor Dispute and NLRB's Suit Against Healthbridge. . . . . . . . . . . . . . . . 3

 B. The Bankruptcy Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

 C. Plaintiffs' Suit Against the Unions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

 D. The Subpoena to Senator Blumenthal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

The Subpoena to Senator Blumenthal Should Be Quashed
and the Court Should Enter a Protective Order
Against Further Discovery From the Senator. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

 I. The Subpoena Presents an Undue Burden.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

 II. The Speech or Debate Clause Protects Senators From Being
  Compelled to Testify or Produce Documents Regarding Matters
  Within the Legislative Sphere.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

 III. The Subpoena Should Be Quashed Because It Seeks to Compel
  Testimony From a High-Ranking Government Official in the
  Absence of Extraordinary Circumstances.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**EXHIBITS LIST**

Exhibit A        Subpoena to Senator Richard Blumenthal in *Care One Management, LLC v. United Healthcare Workers East, SEIU 1199*, No. 2:12-cv-06371 (D.N.J.)

Exhibit B        Amended Complaint for Monetary and Equitable Relief

Exhibit C        Letter from Thomas E. Caballero, Asst. Senate Legal Counsel, to Rosemary Alito, Esq., dated March 10, 2014

Exhibit D        Letter to Hon. Madeline C. Arleo from Rosemary Alito, Esq., dated Feb. 25, 2014

Exhibit E        Letter to Hon. Madeline C. Arleo from Rosemary Alito, Esq., dated March 3, 2014

# TABLE OF AUTHORITIES

## CASES

*Bardoff v. United States*, 628 A.2d 86 (D.C. 1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516 (2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bill Johnson's Rests. v. N.L.R.B.*, 461 U.S. 731 (1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . 13

\* *Bogan v. City of Boston*, 489 F.3d 417 (1st Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

\* *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995).. . . . . . . . . 15, 19

*Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1971). . . . . . . . . . . . . . . . . . . . 12

*Campbell v. PMI Food Equipment Group, Inc.*, 509 F.3d 776 (6th Cir. 2007). . . . . . . . . . . . . . 13

*Care One Management, LLC v. United Healthcare Workers East, SEIU 1199*,
    2013 WL 5603881 (D.N.J. Oct. 10, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365 (1991). . . . . . . . . . . . . . . . 13

*Coleman v. District of Columbia*, 275 F.R.D. 33 (D.D.C. 2011). . . . . . . . . . . . . . . . . . . . . . . 14

*Covad Communications Co. v. Bell Atlantic Corp.*, 398 F.3d 666 (D.C. Cir. 2005). . . . . . . . . . 12

*Doe v. McMillan*, 412 U.S. 306 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Dominion Cogen, D.C., Inc. v. District of Columbia*, 878 F. Supp. 258 (D.D.C. 1995). . . . . . . . 19

*E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961). . . . . . . . 12, 13

*Eastland v. United States Servicemen's Fund*, 421 U.S. 491 (1975). . . . . . . . . . . . . . . . 15, 16, 19

\* *Gravel v. United States*, 408 U.S. 606 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 20

*Helstoski v. Meanor*, 442 U.S. 500 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Howard v. Office of Chief Administrative Officer of U.S. House of Representatives*,
    720 F.3d 939 (D.C. Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re 710 Long Ridge Road Operating Company II, LLC*, 2014 WL 407528
    (Bankr. D.N.J. Feb. 3, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re 710 Long Ridge Road Operating Company II, LLC*, 2014 WL 886433
    (Bankr. D.N.J. Mar. 5, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re FDIC*, 58 F.3d 1055 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Office of Inspector General*, 933 F.2d 276 (5th Cir. 1991). . . . . . . . . . . . . . . . . . . . . 22

*In re United States (Bernanke)*, 542 Fed. Appx. 944 (Fed. Cir. 2013). . . . . . . . . . . . . . . 22, 23

\* *In re United States (Holder)*, 197 F.3d 310 (8th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re United States (Kessler)*, 985 F.2d 510 (11th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . 22, 24

*Kilbourn v. Thompson*, 103 U.S. 168 (1881). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*Kreisberg v. Healthbridge Management, LLC*,
    2012 WL 6553103 (D. Conn. Dec. 14, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Kreisberg v. Healthbridge Management, LLC*,
    2013 WL 6804188 (D. Conn. Dec. 23, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Kreisberg v. Healthbridge Management, LLC*, 732 F.3d 131 (2d Cir. 2013). . . . . . . . . . . . . . .4

*Lederman v. New York City Dept. of Parks*, 731 F.3d 199 (2d Cir. 2013). . . . . . . . . . . . . . . 22

*Manistee Town Center v. City of Glendale*, 227 F.3d 1090 (9th Cir. 2000). . . . . . . . . . . . . . 12

*McGrain v. Daugherty*, 273 U.S. 135 (1927). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Miller v. Transamerican Press, Inc.*, 709 F.2d 524 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . 19

\* *MINPECO, S.A. v. Conticommodity Services, Inc.*,
    844 F.2d 856 (D.C. Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14, 15, 16, 21

*N.L.R.B. v. 710 Long Ridge Road Operating Company II, LLC*, 2014 WL 906128
    (D.N.J. Mar. 6, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*N.L.R.B. v. 710 Long Ridge Road Operating Company II, LLC*, 2014 WL 1155539
    (D.N.J. Mar. 21, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*North Carolina Right to Life v. Leake*, 231 F.R.D. 49 (D.D.C. 2005). . . . . . . . . . . . . . . . . . . 9

*Pittston Coal Group, Inc. v. Int'l Union, United Mine Workers of Am.*,
    894 F. Supp. 275 (W.D. Va. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

\* *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575 (D.C. Cir. 1985). . . . . . . . . . . 22

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Springfield Terminal Railway Co. v. United Transportation Union*,
    1989 WL 225031 (D.D.C. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Tavoulareas v. Piro*, 93 F.R.D. 11 (D.D.C. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Morgan*, 313 U.S. 409 (1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*United States v. Peoples Temple of the Disciples of Christ*,
    515 F. Supp. 246 (D.D.C. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

\* *United Transportation Union v. Springfield Terminal Railway Co.*,
    132 F.R.D. 4 (D. Me. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 20, 21

*Venetian Casino Resort, L.L.C. v. N.L.R.B.*, 484 F.3d 601 (D.C. Cir. 2007). . . . . . . . . . . . . . . 13

*Warzon v. Drew*, 155 F.R.D. 183 (E.D. Wis. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*We, Inc. v. City of Philadelphia*, 174 F.3d 322 (3d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Williams v. Johnson*, 597 F. Supp. 2d 107 (D.D.C. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . 9

## CONSTITUTION AND STATUTES

U.S. Const. art. I, § 6, cl. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15

29 U.S.C. § 160(j). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## RULES

Fed. R. Civ. P. 26(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Civ. P. 26(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 30(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 45(d)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**CONGRESSIONAL MATERIAL**

158 Cong. Rec. S2620-21 (daily ed. Apr. 24, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Judiciary Subcommittee on Oversight, Federal Rights, and Agency Action,
    http://www.judiciary.senate.gov/about/subcommittees#oversight. . . . . . . . . . . . . . . . . 17

Elder Protection and Abuse Prevention Act, S. 2077, 112th Cong. (2012). . . . . . . . . . . . . . . . . 18

Re-empowerment of Skilled and Professional Employees and
    Construction Tradeworkers Act, S. 2168, 112th Cong. (2012). . . . . . . . . . . . . . . . . . . . . . 17

Robert Matava Exploitation Protection for Elder Adults Act of 2012,
    S. 3598, 112th Cong. (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Improving Dementia Care Treatment for Older Adults Act of 2012,
    S. 3604, 112th Cong. (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Family and Medical Leave Inclusion Act, S. 857, 113th Cong. (2013). . . . . . . . . . . . . . . . . . . . 17

Elder Protection and Abuse Prevention Act , S. 1019, 113th Cong. (2013). . . . . . . . . . . . . . . . 18

Fair Employment Opportunity Act of 2014, S. 1972, 113th Cong. (2014).. . . . . . . . . . . . . . . . . 17

*Protecting Our Seniors: Supporting Efforts to End Elder Abuse: Field Hearing Before the*
    *Senate Special Committee on Aging,* S. Hrg. 112-135 (Aug. 23, 2011). . . . . . . . . . . . . . 18

*Time Takes Its Toll: Delays in OSHA's Standard-Setting Process and the Impact on*
    *Worker Safety: Hearing Before the Senate Committee on Health, Education,*
    *Labor, and Pensions,* S. Hrg. 112-725 (Apr. 19, 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . 17

S. Res. 392, 113th Cong., 160 Cong. Rec. S1664 (daily ed. Mar. 13, 2014). . . . . . . . . . . . . . 8, 24

Senate Rule XXV.1(m). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

---

[*] Cases and authorities chiefly relied upon are denoted with an asterisk.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ ) | | |
| IN RE RULE 45 SUBPOENA TO | ) | |
| NON-PARTY | ) | |
| SENATOR RICHARD BLUMENTHAL | ) | |
| | ) | |
| in the matter of | ) | |
| | ) | Misc. No. _____ |
| CARE ONE MANAGEMENT, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | [Underlying civil action filed in |
| | ) | U.S. District Court for the |
| UNITED HEALTHCARE WORKERS | ) | District of New Jersey, |
| EAST, SEIU 1199, *et al.*, | ) | Case No. 2:12-cv-06371-SDW-MAH] |
| | ) | |
| Defendants, | ) | |
| _____) | | |

### MEMORANDUM OF POINTS AND AUTHORITIES IN
### SUPPORT OF SENATOR RICHARD BLUMENTHAL'S
### MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER

### INTRODUCTION

Plaintiffs in the above-captioned civil action in the U.S. District Court for the District of

New Jersey have issued a subpoena to United States Senator Richard Blumenthal seeking to

compel his deposition testimony and the production of documents from his Senate office.[1]  The

case arises out of a labor dispute between the plaintiffs, Care One Management, LLC and

Healthbridge Management, LLC ("Healthbridge"), which between them own and manage over

---

[1]  The Subpoena to Senator Blumenthal [hereinafter "Blumenthal Subpoena"] is attached
as Exhibit A.

1

50 assisted-living facilities in Connecticut[2], and one of the named defendants, New England

Health Care Employees Union, District 1199 ("NEHCEU"), which represents employees at five

of the facilities operated by Healthbridge.[3]  Plaintiffs claim that tactics used by the Unions in the

labor dispute violate the Racketeer Influenced Corrupt Organizations Act as well as state tort law.

Although the suit is still at a preliminary stage – defendants' motion to dismiss the

amended complaint is pending and no answer has yet been filed – the plaintiffs have issued a

subpoena to Senator Blumenthal seeking a broad range of testimony and documents from the

Senator, including internal deliberations and communications of the Senator's office.[4]  Senator

Blumenthal has publicly supported the employees and the Unions in the labor dispute, including

joining the striking employees on the picket lines, and plaintiffs allege that the Unions have made

misleading statements to public officials regarding Healthbridge and the labor dispute in order to

influence public officials against plaintiffs.  In response to the subpoena, Senator Blumenthal's

office has provided plaintiffs with copies of all written communications between the Senator's

office and officials or representatives of the Defendant Unions regarding the labor dispute between

Healthbridge and the employees at the five facilities referenced in the subpoena request.  However,

the Senator objected to the production and inspection of other documents sought by the subpoena as

well as the request for deposition testimony, and now moves this Court to quash the subpoena and

enter a protective order precluding further discovery from the Senator on multiple grounds.

---

[2]  These facilities are each individually named as co-plaintiffs in the suit.

[3]  NEHCEU, along with the other named defendant, United Healthcare Workers East, SEIU 1199 ("UHWE"), is affiliated with the Service Employees International Union ("SEIU"). The two defendants, NEHCEU and UHWE, are collectively referred to herein as the "Unions."

[4]  The plaintiffs have issued a similar subpoena to U.S. Representative Rosa DeLauro, and Rep. DeLauro has objected to that subpoena.

First, the subpoena presents an undue burden because it seeks an exceptionally broad scope of materials and information without any demonstration that the requested materials are relevant to plaintiffs' claims in this action or that the Senator has any relevant, first-hand knowledge about those claims.  Second, the subpoena seeks information that is absolutely privileged from disclosure under the Speech or Debate Clause, art. I, § 6, cl. 1, of the United States Constitution.  Internal deliberations and communications within the Senator's office and information acquired by that office regarding the labor dispute and its effect on healthcare employment, labor relations, and elder care in Connecticut are matters within the legislative sphere that are privileged under the Clause.

Finally, the subpoena improperly seeks to compel testimony from a high-ranking government official without any exceptional circumstances justifying such an intrusion on the Senator's duties.  Plaintiffs offer no basis at all – much less any "extraordinary circumstances" – for seeking deposition testimony from Senator Blumenthal.  Indeed, any information the Senator could have received about matters even arguably relevant to plaintiffs' claims may be sought directly from others, including parties to this action – namely, officials of the Unions.

Accordingly, the Court should quash the subpoena to Senator Blumenthal and issue a protective order precluding plaintiffs from seeking any further discovery from him.

## BACKGROUND

### A.    The Labor Dispute and NLRB's Suit Against Healthbridge

Healthbridge began negotiations with NEHCEU on a new collective bargaining agreement for employees at the five assisted-living facilities in January 2011, as the previous agreement was expiring in March 2011.  *See Kreisberg v. Healthbridge Management, LLC*, 2012

WL 6553103, *1-*5 (D. Conn. Dec. 14, 2012) (setting forth history of labor dispute). In June

2012, after the parties had failed to reach a new agreement, Healthbridge made unilateral changes

to the existing employment contract without the NEHCEU's consent, and the employees at the

facilities then initiated an unfair labor practices strike. *Id.* at *4.

In August 2012, the National Labor Relations Board (NLRB) authorized its regional

director to bring an unfair labor practices suit against Healthbridge and to seek a section 10(j) (29

U.S.C. § 160(j)) temporary injunction reinstating the striking employees to their jobs, restoring

the previous employment terms and conditions before Healthbridge's unilateral changes in June

2012, and requiring Healthbridge to bargain in good faith. *Id.* at *5. The district court in that

case found reasonable cause to believe that Healthbridge failed to bargain with the NEHCEU in

good faith and granted the requested injunctive relief. *Id.* at *12. The court of appeals affirmed

the district court's judgment granting the injunction. *Kreisberg v. Healthbridge Management,*

*LLC*, 732 F.3d 131 (2[d] Cir. 2013). The employees returned to their jobs in March 2013. The

NLRB's suit remains on-going, with litigation currently over whether Healthbridge was properly

held in contempt for failing to comply with the district court's injunction to restore the previous

status quo wages and benefits to the employees. *See Kreisberg v. Healthbridge Management,*

*LLC*, 2013 WL 6804188 (D. Conn. Dec. 23, 2013) (finding Healthbridge in contempt of

injunction).

### B.    The Bankruptcy Case

In February 2013, the five assisted-living facilities embroiled in the labor dispute filed for

bankruptcy protection in the U.S. Bankruptcy Court for the District of New Jersey. *See In re 710*

*Long Ridge Road Operating Company II, LLC*, Case No. 13-13653 and related cases Nos. 13-

13654, 13-13655, 13-13656, and 13-13657 (Bankr. D.N.J.).  As part of that action, the

bankruptcy court has approved changes to the employment terms of the collective bargaining

agreement, *see In re 710 Long Ridge Road Operating Company II, LLC*, 2014 WL 407528

(Bankr. D.N.J. Feb. 3, 2014) and 2014 WL 886433 (Bankr. D.N.J. Mar. 5, 2014), and the NLRB

has filed an appeal of the bankruptcy court's opinion and confirmation order of the

reorganization plan of the debtors (the five facilities).  *See N.L.R.B. v. 710 Long Ridge Road*

*Operating Company II, LLC*, 2014 WL 906128 (D.N.J. Mar. 6, 2014) and 2014 WL 1155539

(D.N.J. Mar. 21, 2014) (denying motions to stay pending appeal).  The bankruptcy proceedings

remain on-going, and the interaction between those bankruptcy proceedings in the District of

New Jersey and the NLRB suit in the District of Connecticut are in dispute.

> ### C.    Plaintiffs' Suit Against the Unions

In October 2012, plaintiffs filed the instant suit against the Unions in the District of New

Jersey.  In this case, plaintiffs allege that the Defendant Unions engaged in purportedly criminal

and fraudulent tactics as part of the labor dispute with Healthbridge in order to put pressure on

Care One and Healthbridge.  Plaintiffs assert that these actions by the Unions violated the

Racketeer Influenced Corrupt Organizations (RICO) Act, and also constituted unfair trade

practices and tortious interference with contracts under state law.  Complaint for Monetary and

Equitable Relief, ECF Dkt. No. 1 in *Care One Management, LLC v. United Healthcare Workers*

*East, SEIU 1199*, No. 2:12-cv-06371 (D.N.J.) ¶¶ 1-24.  The Defendant Unions moved to dismiss

the original complaint, and the district court granted in part and denied in part that motion, and

permitted plaintiffs to file an amended complaint.  *See Care One Management, LLC v. United*

*Healthcare Workers East, SEIU 1199*, 2013 WL 5603881 (D.N.J. Oct. 10, 2013).

In their Amended Complaint for Monetary and Equitable Relief, ECF Dkt. No. 37, No. 2:12-cv-06371 (D.N.J. Dec. 2, 2013) [hereinafter "Am. Compl."][5], plaintiffs re-allege their claims that the Defendant Unions' actions in the labor dispute with Healthbridge violated the RICO Act, constituted unfair trade practices, and were a tortious interference with contracts. Specifically, plaintiffs allege four principal tactics the Defendant Unions have purportedly undertaken to undermine the plaintiffs' facilities.  First, they claim that the Unions have engaged in "vandalism and other criminal acts to endanger patients and disrupt Plaintiffs' ability to provide quality services and [to] bring about negative outcomes before the Connecticut regulatory authorities."  Am. Compl. ¶ 159.  The alleged "criminal acts" and "act of sabotage" include employees purposefully mixing up patient identifying items (such as ID bracelets) and tampering with equipment in the facilities.  *Id.* ¶ 160.

Second, plaintiffs allege that the Unions "disseminat[ed] false, misleading, and defamatory information about Plaintiffs designed to dissuade patients and their family members from doing business with Plaintiffs."  *Id.* ¶ 159.  Third, plaintiffs assert that the Unions are attacking plaintiffs by "publicly smearing Mr. [Daniel] Straus[6] concerning items completely unrelated to any labor-related grievances."  And fourth, plaintiffs allege that the defendants "abus[ed] the legal process on unrelated matters solely to drive up costs for Plaintiffs."  *Id.*

While the amended complaint contains no mention of Senator Blumenthal nor alleges any specific acts taken by the Senator, plaintiffs do allege generally that "Defendant[] [Unions] enlisted elected officials in the State of Connecticut to deprive Plaintiffs of normal legal

---

[5]  Plaintiffs' amended complaint (without the accompanying 456 pages of exhibits) is attached as Exhibit B.

[6]  Mr. Straus is a "direct or indirect owner of the Plaintiffs."  Am. Compl. ¶ 3.

processes and threaten groundless actions against them." *Id.* ¶ 7[7]. These actions allegedly

included a threat to impose a "receivership" on plaintiffs' Connecticut facilities that was

purportedly made by the Governor's office to a third party. *Id.* ¶¶ 15, 37, 180.

After plaintiffs filed their amended complaint, defendants requested a stay on discovery

pending a ruling on a renewed motion to dismiss they planned to file.  ECF Dkt. No. 46, No.

2:12-cv-06371 (D.N.J. Dec. 13, 2013).[8]  Soon after the motion to stay was filed, the Magistrate

Judge held a scheduling conference and entered a scheduling order in the case.[9]  Subsequently,

the District Judge denied as moot the request to stay discovery pending resolution of the motion to

dismiss "pursuant to the parties['] recent conference with the Magistrate Judge . . . as discovery will

proceed on a limited basis until the recently filed Motion to Dismiss the Amended Complaint (Dkt.

No. 55) is addressed."  Order of Feb. 6, 2014, ECF Dkt. No. 58, No. 2:12-cv-06371 (D.N.J.).

Despite the court's indication that discovery would proceed on "a limited basis" pending a

ruling on the motion to dismiss, plaintiffs then noticed the depositions of 15 persons[10], including

---

[7]  Plaintiffs allege that these elected officials are "beholden to Defendants [the Unions] as a consequence of outsized campaign contributions," and have assisted the Union in the campaign against plaintiffs, specifically naming Connecticut Governor Dannell Malloy and Connecticut Attorney General George Jepsen as "non-party participants."  Am. Compl. ¶ 37.

[8]  Defendants filed their Motion to Dismiss the Amended Complaint on January 31, 2014. ECF Dkt. No. 55, No. 2:12-cv-06371 (D.N.J.).

[9]  The scheduling order entered by the Magistrate Judge allowed the parties to serve 25 interrogatories and requests for production by February 7, 2014.  *See* Pretrial Scheduling Order, ¶ 16, ECF Dkt. No. 49, No. 2:12-cv-06371 (D.N.J. Jan. 9, 2014).  After the scheduling conference, the defendants re-submitted their motion to stay discovery.  ECF Dkt. No. 48, No. 2:12-cv-06371 (D.N.J. Jan. 8, 2014).

[10]  Federal Rule of Civil Procedure 30(a)(2) requires a party to obtain leave of court to take more than 10 depositions.  The docket in 12-cv-6371 (D.N.J.) does not indicate that plaintiffs have sought or obtained leave to take the 15 depositions they have noticed.

Senator Blumenthal, Representative Rosa DeLauro, Connecticut Attorney General George Jepsen, two members of the Connecticut legislature, and the office of Connecticut Governor Dannel Malloy, all of whose depositions are sought by subpoena. In addition to deposition testimony, the subpoenas to the elected officials also seek to compel the production of documents.

### D.     The Subpoena to Senator Blumenthal

Plaintiffs' subpoena *duces tecum* to Senator Blumenthal seeks deposition testimony from the Senator and the production of materials responsive to 15 categories of document demands. Those demands include, *inter alia*: all documents related to the strikes called by NEHCEU at the five facilities in question; all communications between the Senator's office and SEIU relating to plaintiffs; all communications with the Defendant Unions relating in any way to any of the Plaintiffs; all documents relating to any of the Plaintiffs; and all documents relating to the SEIU or Defendants. *See* Blumenthal Subpoena (Ex. A) at 6-7.[11]

In a March 10, 2014 letter responding to the subpoena, counsel for the Senator informed plaintiffs that Senator Blumenthal's office would seek authorization from the Senate to produce "all written communications between the Senator's office and officials or representatives of NEHCEU or United Healthcare Workers East, SEIU 1199, regarding the labor dispute between Healthbridge Management, LLC, and the employees at the five facilities referenced in the subpoena request." Letter from Thomas E. Caballero, Asst. Senate Legal Counsel, to Rosemary Alito, Esq., dated March 10, 2014 [attached as Exhibit C]. The Senate authorized that production. *See* S. Res. 392, 113th Cong., 160 Cong. Rec. S1664 (daily ed. Mar. 13, 2014). Copies of those documents were sent to plaintiffs on April 14.

---

[11] By agreement of plaintiffs, the subpoena's return date was extended and Senator Blumenthal was given until April 15 to move to quash the subpoena or for a protective order.

The March 10 letter also informed plaintiffs that the Senator objects under Fed. R. Civ. P. 45(d)(2)(B) to the production and inspection of other documents sought by the subpoena, including internal communications within the Senator's office and draft documents and memoranda, for reasons of undue burden, relevance, and privilege as described below.  The letter further notified plaintiffs that the Senator also objected to the request for deposition testimony and would seek relief from the Court to quash the subpoena.  *See* March 10, 2014 Letter from Thomas E. Caballero, Ex. C.[12]

## ARGUMENT

### THE SUBPOENA TO SENATOR BLUMENTHAL SHOULD BE QUASHED AND THE COURT SHOULD ENTER A PROTECTIVE ORDER AGAINST FURTHER DISCOVERY FROM THE SENATOR

### I.   The Subpoena Presents an Undue Burden.

"Undue burden is determined by reference to factors such as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.  Moreover, non-party status is also relevant in considering the burden."  *North Carolina Right to Life v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005) (internal quotation marks and citations omitted); *see Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ("relevance" one of the factors considered in determining whether subpoena presents "undue burden").

---

[12]   The March 10 letter invited plaintiffs' counsel to discuss the objections raised by Senator Blumenthal to explore whether production of additional documents under a narrower scope might be possible.  On March 12, 2014, counsel for plaintiffs and counsel for Senator Blumenthal held a telephone conference to discuss the matter.  During that telephone conference, plaintiffs' counsel indicated that they intended to send a letter suggesting possible changes in the scope of their requests in order to see if some accommodation could be reached on the matter. As of the date of this filing, over a month since that telephone conference, counsel for Senator Blumenthal have not received any such letter.

The subpoena presents an undue burden because it seeks an exceptionally broad scope of materials without any demonstration that the requested materials are relevant to the claims in this action. Among the categories of documents demanded by the subpoena are: "Any and all documents relating to the SEIU or Defendants,"; "Any and all documents relating to any of the Plaintiffs"; and "All communications between you and any officer, employee, or agent of the SEIU, relating in any way to any of the Plaintiffs." Blumenthal Subpoena (Ex. A) at 6-7. None of those requests focuses on matters relevant to the claims asserted in the amended complaint, *see* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"), or *even* the underlying labor dispute that is the basis for this suit. Surely every communication or document the Senator has pertaining to the SEIU, a nationwide union with millions of members and over 100 local affiliates, cannot possibly be relevant to the particular claims in plaintiffs' complaint arising out of the labor dispute at the five assisted-living facilities in Connecticut. Such broad discovery is particularly burdensome here, as plaintiffs' subpoena seeks to probe into the internal communications and deliberations of a Senator and his office. *See MINPECO, S.A. v. Conticommodity Services, Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988) (noting that "[d]iscovery procedures can prove just as intrusive" to Members and congressional staff, and "distract them from their legislative work," as civil actions against them directly).

Senator Blumenthal has already provided to plaintiffs the written communications between his office and the Defendant Unions regarding the labor dispute between Healthbridge and the employees at the five assisted-living facilities referenced in the subpoena. Plaintiffs have made no showing of relevance or need for internal communications or documents within the

Senator's office, whether about the labor dispute, the plaintiffs, the Unions, or the facilities involved in the labor dispute.

Similarly, plaintiffs' demand to depose Senator Blumenthal presents an undue burden because plaintiffs have not demonstrated that he has any first-hand knowledge relevant to the claims in this suit.  In a letter filed with the Magistrate Judge in the court where this case is pending, plaintiffs attempted to justify their need to depose Senator Blumenthal by claiming that the Senator was "among the elected officials to whom Defendants directed false and misleading statements about Plaintiffs, and whom the Defendants otherwise influenced and/or sought to influence, in an effort to generate support for their unlawful corporate campaign."  Letter to Hon. Madeline C. Arleo from Rosemary Alito, Esq., dated Feb. 25, 2014, at 4 [attached at Exhibit D]. To support this allegation, plaintiffs asserted that documents produced by the NEHCEU in the bankruptcy proceedings revealed that the union sent multiple e-mail communications to Senator Blumenthal's staff, along with staff of other elected officials, "complain[ing] about the bankruptcy proceedings and urg[ing them] to place Plaintiffs' Connecticut facilities under receivership."  Id.  Further, plaintiffs claim that the Senator possesses personal knowledge of relevant information regarding communications with NEHCEU on the "receivership issue" and other unnamed "issues relating to Plaintiffs."  Letter to Hon. Madeline C. Arleo from Rosemary Alito, Esq., dated March 3, 2014, at 2 [attached as Exhibit E].

Yet neither in the documents plaintiffs appended to their February 25 letter to the Magistrate Judge nor in any other documentation plaintiff has pointed to in this matter[13] is there a

_____

[13]  As stated above, Senator Blumenthal has provided all written communications between the Senator's office and officials or representatives of New England Health Care Employees Union, District 1199, or United Healthcare Workers East, SEIU 1199, regarding the labor dispute between Healthbridge and the employees at the five facilities referenced in the subpoena request.

reference or example of the Unions urging Senator Blumenthal to place Plaintiffs' facilities in receivership or to pressure Connecticut officials to do so. Indeed, the amended complaint alleges that plaintiffs became aware of the "receivership" issue based on a communication from the Governor's office to a third party – not from any communication involving or even referring to Senator Blumenthal. Am. Compl. ¶¶ 15, 37, 180. In sum, nowhere in the record is there any indication that the Senator or his office has any personal knowledge or involvement with the allegation of pressure on Connecticut government officials, at the instigation of the Defendant Unions, to place plaintiffs' facilities into receivership.

Moreover, it is unclear how any discovery regarding the alleged attempt by the Unions to lobby government officials for support could be relevant to the RICO and other claims in plaintiffs' amended complaint. Under the Supreme Court's *Noerr-Pennington* doctrine, "petitioning the Government for redress of grievances, whether by efforts to influence legislative or executive action or by seeking redress in court, is immune from liability under the antitrust laws." *Covad Communications Co. v. Bell Atlantic Corp.*, 398 F.3d 666, 677 (D.C. Cir. 2005) (citing *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961) and *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1971)); *see also We, Inc. v. City of Philadelphia*, 174 F.3d 322, 326-27 (3ᵈ Cir. 1999). This doctrine, which is predicated on "the First Amendment right of citizens to petition the government and participate in the legitimate processes of government," *We, Inc.*, 174 F.3d at 326, has been extended to protect citizens' petitioning activities in contexts outside the antitrust area, *see id.*; *Manistee Town Center v. City of Glendale*, 227 F.3d 1090, 1092 (9ᵗʰ Cir. 2000) ("[*Noerr-Pennington*] immunity is no longer limited to the antitrust context"); *Campbell v. PMI Food Equipment*

*Group, Inc.*, 509 F.3d 776, 790 (6th Cir. 2007) ("Although the *Noerr-Pennington* doctrine was initially recognized in the antitrust field, the federal courts have by analogy applied it to claims brought under both state and federal laws, including common law claims of tortious interference."); *see also Venetian Casino Resort, L.L.C. v. N.L.R.B.*, 484 F.3d 601, 612 (D.C. Cir. 2007) (noting that Supreme Court has extended doctrine into labor law context for direct petitioning) (citing *Bill Johnson's Rests. v. N.L.R.B.*, 461 U.S. 731 (1983); *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516 (2002)), including the RICO context. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 932-33 (9th Cir. 2006).

While plaintiffs assert that the Unions, particularly NEHCEU, made "false and misleading statements" to elected officials, including Senator Blumenthal, Feb. 25, 2014 Letter of Rosemary Alito, Esq. (Ex. D) at 4, even if true (and plaintiffs do not identify any specific false statement), any such deception in lobbying legislators would be protected petitioning of the government under the *Noerr-Pennington* doctrine. *See Noerr Motor Freight*, 365 U.S. at 145 (noting that fact "that each group has deliberately deceived the public and public officials[,] . . . reprehensible as it is, can be of no consequence so far as the Sherman Act is concerned"). Similarly, plaintiffs' bald allegation that elected officials are participants in the defendants' alleged conspiracy, Am. Compl. ¶ 37, does not provide a basis for this subpoena, as the Supreme Court has held that claims that private parties conspired with government officials to use government action against a competitor do not remove the protections of the *Noerr-Pennington* doctrine. *See City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 383-84 (1991). Accordingly, given these protections, there is no reasonable predicate for finding that the

discovery sought by plaintiffs' subpoena, particularly internal discussions or communications among the Senator and his staff, is relevant to the claims in this action.

In sum, plaintiffs offer no legal or factual basis for concluding that Senator Blumenthal has any information or documents relevant to a claim or defense in this case. Fed. R. Civ. P. 26(a)(2). Rather, their expansive request for documents and testimony from Senator Blumenthal, which appears based solely on the Senator's public support for NEHCEU and its employee members in the labor dispute and on the fact that NEHCEU has communicated with the Senator's office about that dispute, constitutes an inappropriate "fishing expedition into congressional files[.]" *MINPECO, S.A.*, 844 F.2d at 863.

In determining when a subpoena presents an undue burden, "courts generally employ a balancing test, weighing the burdensomeness to the party on which the subpoena was served against the need of the party which served the subpoena for, and the relevance of, the information being sought." *Coleman v. District of Columbia*, 275 F.R.D. 33, 36-37 (D.D.C. 2011) (internal alterations and citation omitted). Here, the balance weights strongly against compelling the production of further documents from the Senator. Requiring production of internal communications, notes, and draft materials and other records of a Senate office, or testimony by a Senator about such matters, would intrude deeply into the internal workings of the office of a Member of Congress. Balanced against such burden is the lack of any showing of the relevance and need for the documents requested – particularly here, where the Senator has provided all written communications between his office and the Unions about the labor dispute at issue. Accordingly, the Court should quash the subpoena as an undue burden and enter a protective order against seeking further discovery from Senator Blumenthal.

**II.**    **The Speech or Debate Clause Protects Senators From Being Compelled to Testify or Produce Documents Regarding Matters Within the Legislative Sphere.**

The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. The Clause ensures that the "legislative function the Constitution allocates to Congress may be performed independently," *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502 (1975), "without regard to the distractions of private civil litigation or the perils of criminal prosecution." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995). Because "the guarantees of [the Speech or Debate] Clause are vitally important to our system of government," they "are entitled to be treated by the courts with the sensitivity that such important values require." *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979). And so, "[w]ithout exception," the Supreme Court has "read the Speech or Debate Clause broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501.

In addition to immunizing Members of Congress from suit for matters arising from their legislative activities, the Speech or Debate Clause provides "a testimonial and non-disclosure privilege" that protects Members "from being compelled to answer questions about legislative activity or produce legislative materials." *Howard v. Office of Chief Administrative Officer of U.S. House of Representatives*, 720 F.3d 939, 946 (D.C. Cir. 2013). "A party is no more entitled to compel congressional testimony – or production of documents – than it is to sue congressmen." *Brown & Williamson*, 62 F.3d at 421. This privilege provides Members with immunity from subpoenas for testimony, *Eastland*, 421 U.S. at 499 n.13, as well as for documents, *Brown & Williamson*, 62 F.3d at 420; *MINPECO, S.A.*, 844 F.2d at 857; *United States v. Peoples*

15

*Temple of the Disciples of Christ*, 515 F. Supp. 246, 248-49 (D.D.C. 1981); *Tavoulareas v. Piro*, 93 F.R.D. 11, 18 (D.D.C. 1981).

Where the Speech or Debate Clause privilege is raised in defense to a subpoena, the only question to resolve is whether the matters about which testimony or documents are sought "fall within the 'sphere of legitimate legislative activity.'" *Eastland*, 421 U.S. at 501. "[O]nce it is determined that Members are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an absolute bar to interference." *Id.* at 503; *see MINPECO, S.A.*, 844 F.2d at 862 ("Once the legislative act test is met, the principle is absolute.") (internal quotation marks and citation omitted). Legislative activity protected by the Clause encompasses "anything 'generally done in a session of the House by one of its members in relation to the business before it.'" *Doe v. McMillan*, 412 U.S. 306, 311 (1973) (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881)). The Clause accordingly precludes inquiry into "the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House," *Gravel v. United States*, 408 U.S. 606, 625 (1972), which includes deliberation and communication on matters "on which legislation may be had." *Eastland*, 421 U.S. at 508.

The broad subpoena at issue here seeks testimony and materials from the Senator regarding any of his, or his staff's, deliberations, communications, and work product relating to the labor dispute between Healthbridge and NEHCEU, or the parties to that dispute. Such materials and information are directly pertinent to the Senator's legislative activities, and thus fall within the legislative sphere privileged under the Speech or Debate Clause.

In 2011 and 2012, Senator Blumenthal served on the Senate Health, Education, Labor, and Pensions Committee, which has jurisdiction over legislation related to "labor, health and public welfare," including the "mediation and arbitration of labor disputes" and issues regarding "wages and hours of labor." Senate Rule XXV.1(m). In addition, Senator Blumenthal serves on the Senate Judiciary Committee, which has jurisdiction over labor law issues, and the Senator has served as chair of the Judiciary Subcommittee on Oversight, Federal Rights, and Agency Action, which oversees adjudications by agencies such as the NLRB, as well as third-party enforcement of federal rights. *See* http://www.judiciary.senate.gov/about/subcommittees#oversight.

The Senator proposed legislation in the past two Congresses regarding labor and employment issues and actively participated in committee activities on labor and workplace issues. *See*, *e.g.*, Re-empowerment of Skilled and Professional Employees and Construction Tradeworkers Act, S. 2168, 112th Cong. (protecting collective bargaining rights; sponsored by Sen. Blumenthal); Fair Employment Opportunity Act of 2014, S. 1972, 113th Cong. (sponsored by Sen. Blumenthal); Family and Medical Leave Inclusion Act, S. 857, 113th Cong. (co-sponsored by Sen. Blumenthal); *Time Takes Its Toll: Delays in OSHA's Standard-Setting Process and the Impact on Worker Safety: Hearing Before the Senate Committee on Health, Education, Labor, and Pensions*, S. Hrg. 112-725 (Apr. 19, 2012). Information the Senator acquires regarding labor relations and employee workplace issues in his home state of Connecticut generally, and specifically the labor dispute between Healthbridge and the employees at these facilities, informs the Senator's legislative activities in these committees and in the Chamber generally, including considering the potential need for legislation with regard to NLRB actions, the interaction between unfair labor practice suits and concurrent bankruptcy proceedings, and the

enforcement of federal labor and employment rights.  *See, e.g.*, 158 Cong. Rec. S2620-21 (daily ed.

Apr. 24, 2012) (statement of Sen. Blumenthal opposing joint resolution of disapproval of NLRB

rule regarding procedures by which employees decide whether to organize and join a labor union).

Issues in the Healthbridge labor dispute also inform Senator Blumenthal's legislative

activities regarding the elderly, including the Senator's service on the Senate Special Committee

on Aging, *see Protecting Our Seniors: Supporting Efforts to End Elder Abuse: Field Hearing*

*Before the Senate Special Committee on Aging*, S. Hrg. 112-135 (Aug. 23, 2011) (Sen.

Blumenthal presiding), and the Senator's legislative work to combat elder abuse and the over-

prescription of anti-psychotic drugs to the elderly.  *See, e.g.*, Elder Protection and Abuse

Prevention Act, S. 2077, 112th Cong. and S. 1019, 113th Cong. (sponsored by Sen. Blumenthal);

Improving Dementia Care Treatment for Older Adults Act of 2012, S. 3604, 112th Cong. (co-

sponsored by Sen. Blumenthal); Robert Matava Exploitation Protection for Elder Adults Act of

2012, S. 3598, 112th Cong. (sponsored by Sen. Blumenthal); Improving Dementia Care Treatment

for Older Adults Act of 2012, S. 3604, 112th Cong. (co-sponsored by Sen. Blumenthal).

Thus, the communications and deliberations within the Senator's office regarding the

labor dispute at these facilities and the legal proceedings relating to that dispute fall squarely

within the legislative sphere privileged from disclosure by the Speech or Debate Clause.  *See*

*Pittston Coal Group, Inc. v. Int'l Union, United Mine Workers of Am.*, 894 F. Supp. 275, 278 n.5

(W.D. Va. 1995) (finding "internal staff memoranda" protected by the Clause, and stating that

"[c]ommunication . . . between congressional legislators and their aides[] is 'an integral part of

the . . . communicative processes by which Members participate in . . . House [and Senate]

proceedings'") (quoting *Gravel*, 408 U.S. at 625); *United Transportation Union v. Springfield*

18

*Terminal Railway Co.*, 132 F.R.D. 4, 6 (D. Me. 1990) (internal communications between legislators and their aides "is plainly an integral part of the . . . communicative processes by which Members participate in House proceedings.") (internal quotation marks omitted).

Information acquired by the Senator and his staff on this matter also is privileged under the Speech or Debate Clause.  As the Supreme Court has recognized, "A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change." *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927). Senators gather and receive information from many sources, including constituents and other non-governmental sources, and their activities in so doing – and the information they receive – are protected by the Clause.  *See Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983) ("Obtaining information pertinent to potential legislation or investigation is one of the 'things generally done in a session of the House,' concerning matters within 'the legitimate legislative sphere.'" (quoting *Kilbourn*, 103 U.S. at 204 and *Eastland*, 421 U.S. at 503)); *Williams v. Johnson*, 597 F. Supp. 2d 107, 114 (D.D.C. 2009) ("[T]he Court is persuaded that, regardless of whether conducted formally or informally, 'the acquiring of information [is] an activity that is a necessary concomitant of legislative conduct and thus should be within the ambit of the privilege so that [legislators] are able to discharge their duties properly.'") (quoting *Dominion Cogen, D.C., Inc. v. District of Columbia*, 878 F. Supp. 258, 263 (D.D.C. 1995) (internal quotation marks omitted)); *cf. Brown & Williamson*, 62 F.3d at 423 (finding that "Speech or Debate Clause bars [] claim" that a party issuing a subpoena to a Member of Congress has "a right to engage in a broad scale discovery of documents in a congressional file that comes from third parties").

The circumstances here are closely analogous to those in *United Transportation Union v.*

*Springfield Terminal Railway Co.*, 132 F.R.D. 4 (D. Me. 1990), where the court held that the

Speech or Debate Clause protected a Senator from a third-party subpoena seeking internal

documents and communications from his office relating to an on-going labor dispute.  In that

case, the employer, Springfield Terminal Railway Company, alleged that a labor arbitration

proceeding under the National Mediation Board had been corrupted by improper contacts by

"political factions" – including Members of Congress.  *Id.* at 5.  As part of discovery, the

company issued a subpoena to Senator George Mitchell seeking all documents regarding, *inter*

*alia*, political activities, communications to or from labor organizations, or attempts to influence

the action of any agency related to the underlying labor strike.  *Id.*  After producing external

communications, the Senator withheld internal congressional communications, memoranda, and

draft documents relating in "any way to congressional efforts to influence certain federal agencies

on behalf of the [union]."  *Id.* at 6.  In denying the company's motion to compel production of

those documents, the court found that such internal communications were "'an integral part of

the . . . communicative processes by which Members participate in House proceedings,'" *id.* at 6

(quoting *Gravel*, 408 U.S. at 625), and that the "subjects of the documents sought, the railroad

strike and the railroad leases, are plainly areas of potential legislation within Congress's

constitutional jurisdiction."  *Id.*  Accordingly, the court held that those internal communications

and documents were privileged under the Speech or Debate Clause and denied Springfield

Railway's attempt to compel their production.  *Id.* at 6-7.  The Court here should similarly find

such documents privileged under the Clause and quash plaintiffs' subpoena to Senator Blumenthal.

That the expansive scope of the documents sought by plaintiffs' subpoena may potentially

sweep up some communications outside of the legislative sphere does not remove the protections

of the Speech or Debate Clause nor require an itemized accounting of the documents covered by the privilege. The court in *United Transportation Union* rejected such a parsing of the privilege, noting that even where "internal communications may discuss unprotected activities, their purpose may well be legislative in whole or in part." *Id.* at 6. As the Court explained:

> The purpose of the clause would be ill-served if legislators and their staffs had to search through their internal correspondence, memoranda, notes and collective memories to determine whether a given document had a legislative, non-legislative, or mixed purpose. Much valuable time, energy, and attention would be diverted from important legislative tasks.

*Id.* Thus, the court concluded, "[t]he slight possibility that the internal documents sought might provide leads" to non-privileged, relevant documents, "is not enough to warrant the significant entrenchment on legislative independence that would be effected if this motion to compel internal Congressional communications were granted." *Id.* at 7. The D.C. Circuit in *MINPECO, S.A.*, similarly rejected an attempt to use broad language in a third-party subpoena to pry into internal congressional documents. *See MINPECO, S.A.*, 844 F.2d at 862-63 ("[E]ven though the language of the subpoenas is broad enough to encompass documents that do not relate to the [subpoena issuers'] stated objective," which triggered the privilege, "the effect of their literal enforcement would be to authorize a fishing expedition into congressional files.").

In sum, the documents withheld in response to plaintiffs' subpoena are protected by the Speech or Debate Clause. The deliberations and communications of Senator Blumenthal, as well as the information he has acquired with regard to the matters at issue, are within the legislative sphere protected by the Clause. Accordingly, the subpoena to the Senator seeking to compel deposition testimony and document production should be quashed and a protective order issued prohibiting such discovery.

III.    **The Subpoena Should Be Quashed Because It Seeks to Compel Testimony From a High-Ranking Government Official in the Absence of Extraordinary Circumstances.**

It is well-established that "[h]igh ranking government officials have greater duties and time constraints than other witnesses," and thus "'should not, *absent extraordinary circumstances*, be called to testify regarding their reasons for taking official actions.'" *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993) (per curiam) (quoting *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985)) (emphasis added); *see Lederman v. New York City Dept. of Parks*, 731 F.3d 199, 203 (2d Cir. 2013) (holding that "to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition"); *In re Office of Inspector General*, 933 F.2d 276, 278 (5th Cir. 1991) (per curiam) ("exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted"); *In re United States (Bernanke)*, 542 Fed. Appx. 944, 948 (Fed. Cir. 2013) ("party seeking deposition bears the burden of proving extraordinary circumstances" in order to depose high-ranking official). The "refusal to allow [a party] to call as witnesses top [government] officials fits within the rule enunciated by the Supreme Court in *United States v. Morgan*, [313 U.S. 409, 422 (1941),] that top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co.*, 766 F.2d at 586. This protection from discovery "is warranted because such officials must be allowed the freedom to perform their tasks" without interference, *Warzon v. Drew*, 155 F.R.D. 183, 185 (E.D. Wis. 1994); otherwise "such officials will spend an inordinate amount of time tending to pending litigation." *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007).

22

Members of the United States Senate are undoubtedly "high-ranking governmental officials." *See, e.g.*, *Springfield Terminal Railway Co. v. United Transportation Union*, 1989 WL 225031 at *2 (D.D.C. 1989) (refusing to compel Congressman to submit to deposition because discovery would "disrupt [his] work as the ranking Minority Member of the House Appropriations Committee"); *Bardoff v. United States*, 628 A.2d 86, 90 (D.C. 1993) (affirming trial court order quashing subpoenas to Senators for lack of extraordinary circumstances). Senators, thus, may not be compelled to testify absent a showing of exceptional circumstances.

Plaintiffs here have made no such showing that would warrant compelling the testimony of Senator Blumenthal.  Plaintiffs have failed to demonstrate that the Senator has relevant, first-hand knowledge regarding their claims. *See In re United States (Bernanke)*, 542 Fed. Appx. at 948 ("In deciding whether [party seeking deposition has met its burden to prove extraordinary circumstances], courts have held that the government official must have personal involvement or first-hand knowledge of the underlying dispute.").  Although plaintiffs refer in their February 25, 2014 letter to the Magistrate Judge (Ex. D) to e-mails indicating that the Senator supported NEHCEU and its employee members in the labor dispute, and that NEHCEU kept the Senator's office apprised of developments in that dispute and the ancillary litigation, none of those e-mails, nor any of the written communications with the Unions provided by Senator Blumenthal's office in response to this subpoena, demonstrate that the Senator has any unique, personal knowledge of the facts alleged in the plaintiffs' amended complaint.  Nor do those documents provide any basis to support the allegation that the Unions pressured the Senator to take any impermissible actions – such as pressuring state officials to place Healthbridge's facilities into receivership – as plaintiffs seem to allege here.

Indeed, in providing authorization under Senate rules for Senator Blumenthal to provide documents in response to the subpoena (except where subject to a privilege or objection), the Senate did not authorize any testimony by the Senator, *see* S. Res. 392, 113th Cong., 160 Cong. Rec. at S1664, as the plaintiffs had made no showing that would provide a basis for the Senate to consider authorizing such testimony.

In addition to the lack of any showing that Senator Blumenthal has first-hand information relevant to the plaintiffs' claims, no extraordinary circumstances exist here because the information plaintiffs seek from the Senator regarding communications with, and information received from, the Unions may be sought directly from others, including parties to this very litigation – namely, officials of the Defendant Unions. *See Bogan*, 489 F.3d at 423 (stating that depositions of high ranking officials "permitted only where it is shown that other persons cannot provide the necessary information"). "If other persons can provide the information sought, discovery will not be permitted against such [a high government] official." *In re United States (Holder)*, 197 F.3d 310, 313-14 (8th Cir. 1999) (citing *In re United States (Kessler)*, 985 F.2d at 513); *see also In re FDIC*, 58 F.3d 1055, 1062 (5th Cir. 1995) ("We think it will be the rarest of cases . . . in which exceptional circumstances can be shown where the testimony is available from an alternate witness.").

Plaintiffs have not exhausted discovery from these other sources; indeed, discovery has just begun in this case, a motion to dismiss is pending, and no answer to the complaint has yet been filed. Plaintiffs essentially have initiated discovery by seeking to depose a high-ranking government official – something that should not occur, if at all, until after other methods to obtain the relevant information have been exhausted, and even then, only after demonstrating that the

official has relevant, first-hand information necessary to establish or refute claims made in the case. Under the circumstances present here, plaintiffs cannot meet the high threshold for compelling testimony from a senior government official such as Senator Blumenthal, and accordingly, the subpoena compelling deposition testimony from Senator Blumenthal should be quashed.

## CONCLUSION

For the foregoing reasons, plaintiffs' subpoena *duces tecum* to Senator Blumenthal for deposition testimony and production of documents should be quashed and a protective order entered precluding the plaintiffs from seeking any further discovery from the Senator or his office.

Respectfully submitted,

Morgan J. Frankel, Bar #342022
morgan_frankel@legal.senate.gov
Senate Legal Counsel

Patricia Mack Bryan, Bar #335463
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
thomas_caballero@legal.senate.gov
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel)
(202) 224-3391 (fax)

Date:   April 15, 2014

Counsel for Subpoena Respondent
Senator Richard Blumenthal

25

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2014, copies of the foregoing Memorandum of Points and Authorities in Support of Senator Richard Blumenthal's Motion to Quash Subpoena and for a Protective Order and the accompanying exhibits were served by electronic mail and first class U.S. Mail on counsel for plaintiffs and counsel for defendants in the underlying civil action, 2:12-cv-06371 (D.N.J.), at the following addresses:

Rosemary Alito, Esq.
rosemary.alito@klgates.com
George P. Barbatsuly, Esq.
george.barbatsuly@klgates.com
K&L GATES LLP
One Newark Center, Tenth Floor
Newark, NJ 07012-5252

Counsel for Plaintiffs

Michael D. Critchley, Esq.
mcritchley@critchleylaw.com
Critchley & K, LLC
75 Livingston Avenue
Roseland, NJ 07068-3737

Counsel for Plaintiffs

Leon Dayan, Esq.
ldayan@bredhoff.com
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street, N.W.
Washington, DC 20005-2207

Counsel for Defendants

David M. Slutsky, Esq.
Dslutsky@levyratner.com
LEVY RATNER, P.C.
80 8th Avenue, 8th Floor
New York, NY 10011

Counsel for Defendant United Healthcare
Workers East, SEIU 1199

_____
Morgan J. Frankel